**STATE of Delaware, Respondent Below, Appellant,**

v.

**Ray M. FLETCHER,\* Petitioner Below, Appellee.**

**State of Delaware, Respondent Below, Appellant,**

v.

**Bethany L. Ellis, Petitioner Below, Appellee.**

**No. 85/147, 2008.**

Supreme Court of Delaware.

Submitted: April 30, 2009.
Decided: May 27, 2009.

\* The Court, *sua sponte*, has assigned pseudo-nyms to the parties under Supr. Ct. R. 7(d).

Paul R. Wallace (argued) and Abby Adams, Esquires, Department of Justice, Wilmington, DE, for Appellant.

Bethany L. Ellis, Ellendale, DE, Pro se Appellee.

Richard H. Morse (argued) and Megan C. Haney, Esquires, of Young Conaway Stargatt & Taylor, Wilmington, DE, Amicus Curiae for Appellees.**

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice:

These consolidated appeals explore the interplay between 10 *Del. C.* § 1001 (the "Expungement Statute"), which authorizes the Family Court to order the expungement of all evidence of an adjudication of a juvenile's delinquency and the destruction of all indicia of arrest; and 11 *Del. C.* §§ 4120 and 4121 (the "Sex Offender Registration Statutes"), which mandate the designation and registration of adjudicated sex offenders.

Two issues, both of first impression, are presented.[1] Subject to exceptions not applicable here, the Expungement Statute permits expungement if: (i) three years have elapsed with no subsequent adjudication being entered against the child, (ii) there is no "material objection," and (iii) no reason appears to the contrary. The first question is whether a juvenile's statutorily-mandated designation and registration as a sex offender constitutes, as a matter of law, a "material objection" that precludes the Family Court from issuing an order of expungement. The second issue is whether, if expungement is not precluded, the juvenile whose record is expunged must continue to maintain his or her registration as a sex offender under the Sex Offender Registration Statutes.

We conclude that the answer to both questions is no. The fact that a juvenile is a registered sex offender, alone and without more, does not as a matter of law constitute a "material objection" under the Expungement Statute. Nor is a juvenile whose record as a sex offender is expunged required to maintain in effect his or her statutory sex offender registration. We therefore affirm the Family Court judgments expunging the delinquency adjudication records of the two appellees in these cases.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 28, 2002, appellee "Bethany Ellis" was adjudicated delinquent of one

---

** The *amicus curiae* were court appointed. We commend counsel for the quality of their presentation on this appeal.

1. Rulings by the Family Court on the first issue have been inconsistent. *Compare State v. Brown*, Del.Fam., No. JK99–0084 (Sept. 25, 2006), and *State v. Fisher*, Del.Fam., No. JK 97–1478, *aff'd*, 901 A.2d 120 (Del.2006) (Table) (in both cases, expunging record over State's objection that Expungement Statute was superseded by state and federal Sex Offender Registration Statutes, and that sex offender designation was a "material objection" to expungement) *with In re A.W.M.*, 2005 WL 3662341 (Del.Fam.Ct. Apr. 29, 2005) (exercising discretion to deny expungement because the juvenile was a registered sex offender), and *State v. Turkett*, Del.Fam., JK99–0069 (Apr. 20, 2005) (refusing to expunge juvenile adjudication record because Registration Statutes superseded Expungement Statute, thereby precluding expungement).

count of Second Degree Rape, and four counts of Second Degree Unlawful Sexual Conduct, for conduct that occurred when she was less than fourteen years old. As a result, she was required to register as a Tier III sex offender. Bethany successfully completed the treatment to which she was assigned, and was released from aftercare services. She has not been adjudicated delinquent of any charges since her 2002 adjudication.

On October 30, 2007, Bethany petitioned for expungement of her juvenile record. In support of her petition, she testified that she had been terminated as a junior member of the local fire department when the department discovered that she was a registered sex offender. She also testified that she was told that a store where she had applied for work would not hire her because of her sex offender registration. Because Bethany wishes to go into nursing, she sought expungement because she believes her record will prevent her from obtaining employment at a hospital. By orders dated January 14 and March 5, 2008,[2] the Family Court granted her petition.

On July 21, 2004, appellee "Ray M. Fletcher" pled guilty to two counts of Second Degree Unlawful Sexual Conduct for conduct that occurred when he was 13 and 14 years old. He was adjudicated delinquent and required to register as a Tier II sex offender. Fletcher completed the terms of his probation, was granted an early termination from probation, and has not been adjudicated delinquent of any charges since his 2004 adjudication.

On October 1, 2007, Fletcher filed a petition for expungement of his juvenile record. In support of his petition, he testified that while he was attending a public high school in Ohio under an "open enrollment" program, the school discovered his juvenile record and refused to allow him to return for the following school year. Fletcher testified that he wanted to expunge his record so that he could be rid of the stigma associated with his sex offender status. By order dated January 15, 2008, the Family Court granted his petition.[3]

The State of Delaware, represented by the Department of Justice, opposed both applications at the trial court level, and has appealed from the orders granting the appellees' petitions for expungement of their respective juvenile records. The appeals were consolidated by order of this Court. Neither appellee is represented by counsel. After the State filed its opening brief, appellee "Bethany Ellis" filed an answering brief *pro se*. The other appellee, "Ray M. Fletcher," did not file an answering brief.

On December 3, 2008, this Court appointed Richard H. Morse and Megan C. Haney, Esquires, as *amicus curiae* to file an answering brief in response to the State's opening brief. The *amicus curiae* filed their answering brief on December 24, 2008, after which the case was orally argued.

We turn to the two issues presented on this appeal.

### ANALYSIS

**I.  Sex Offender Registration, Without More, Is Not A "Material Objection" That Automatically Precludes Relief Under The Expungement Statute.**

The Expungement Statute relevantly provides:

---

**2.** Order in Family Court Case No. 0107013712, Petition No. 07–34845.

**3.** Order in Family Court Case No. 0404010640, Petition No. 07–31677.

(a) In any case wherein an adjudication has been entered upon the status of a child under 18 years of age and 3 years have elapsed since the date thereof and no subsequent adjudication has been entered against such child, the child or the parent or guardian may present a duly verified petition to the Court setting forth all the facts in the matter and praying for the relief provided for in this section;

\* \* \*

(c) ... *if no material objection is made* and no reason appears to the contrary, an order may be granted directing the Clerk of the Court to expunge from the records all evidence of such adjudication, excepting adjudications involving the following crimes: Second degree murder, first degree arson, and first degree burglary, and further directing that all indicia of arrest, including fingerprints and photographs, be destroyed.[4]

■ The State's sole objection to the petitions for expungement, in both the Family Court and this Court, is that the petitioners were registered sex offenders. The State claims that each petitioner's designation as a sex offender constitutes a "material objection" that, as a matter of law, precludes expungement of their juvenile adjudication records under Section 1001(c). Because this claim, which the Family Court rejected, involves questions of law and of statutory construction, we review the trial court's adjudication of that claim *de novo*.[5]

■ We begin our analysis with the observation that the term "material objection" is not defined in the Expungement Statute, and that the State cites no authority that directly supports its interpretation of that term.[6] Nor does any language or provision in Section 1001 forbid expungement relief to a juvenile who is a registered sex offender but otherwise satisfies the statute's requirements. Indeed, the only provision of Section 1001 that limits the Family Court's discretion to grant expungement relief is subsection (c), which excepts from the statute's reach, adjudications of Second Degree Murder, First Degree Arson, and First Degree Burglary. None of those exceptions is applicable here. The statute contains no exception for sex offender adjudications.

The State asks us to interpret the term "material objection" in the Expungement Statute as precluding relief to juveniles who otherwise qualify therefor, solely because they are registered sex offenders. Were we to adopt that interpretation, we would be adding to the list of offenses that the General Assembly has expressly declared cannot be expunged, all sex offenses for which registration and designation are required. The General Assembly is empowered to expand that list. We are not.

To avoid having to confront head on that obstacle, the State attempts to reach its goal by a more circuitous route. In substance, the State claims that, by enacting the Sex Offender Registration Statutes, the General Assembly has essentially already modified the Expungement Statute, albeit by implication. The State's argument runs as follows: the expungement statute is inconsistent with the Sex Offender Registration Statutes. The rules of statutory construction require that any such inconsistencies be resolved in favor of the Sex Offender Registration Statutes be-

---

**4.** 10 *Del. C.* §§ 1001(a), (c) (italics added).

**5.** *Outten v. State*, 720 A.2d 547, 551 (Del. 1998); *Poteat v. State*, 840 A.2d 599, 603 (Del.2003).

**6.** The State concedes that "there is no case law directly settling the issue." Appellant's Op. Br., at 19.

cause, to the extent of any conflict, the expression of legislative intent in a more specific and later-enacted statute controls the former, more general statute.[7]

■ The principle of statutory construction upon which the State stakes its case is well established:

> It is assumed that when the General Assembly enacts a later statute in an area covered by a prior statute, it has in mind the prior statute and therefore statutes on the same subject must be construed together so that effect is given to every provision unless there is an irreconcilable conflict between the statutes, in which case the later supersedes the earlier.[8]

What is disputed is not this principle but its application. For the State to prevail it must establish, first, that the Expungement Statute "irreconcilably conflict[s]" with the later-enacted Sex Offender Registration Statutes; and second, that the latter statutes are more specific than the former with respect to their common subject matter. The State has failed to satisfy either condition for the application of its argued-for statutory construction rule.

### A. The Statutes Are Not Irreconcilably In Conflict.

Although the State asserts that the Expungement and the Sex Offender Designation and Registration Statutes are irreconcilably in conflict, nowhere does the State actually identify any irreconcilably conflicting provisions. As noted, the Expunge-ment statute contains no exception or "carve out" for crimes that require sex offender designation and registration. Nor does any provision in the Sex Offender Registration Statutes purport to limit the discretion of the Family Court to grant expungement relief in a proper case.

That perhaps is why the arguments the State offers to satisfy the irreconcilable conflict requirement are diffuse and difficult to parse. The State's position, as best as we can fathom it, is as follows: the initial version of Delaware's sex offender registration law contained a requirement that certain registration records be destroyed for juveniles adjudicated delinquent of sex offenses, who reach age twenty-five without committing any other offenses.[9] That provision was eliminated in 1998 when Section 4120 was re-written and Sections 4121 and 4122 were added.[10] From this history, the State asserts that:

> The inclusion, and later elimination, of this section further clarifies the intent of the General Assembly to prohibit a juvenile sex offender from having his or her sex offenses expunged or any concomitant relief from sex offender designation and registration in any way other than as specifically provided in the sex offender registration statutes [i.e., by the Superior Court as provided in Section 4121].[11]

The difficulty with this assertion is that although it may arguably suggest, at first blush, a statutory conflict, the conflict is only apparent and in any event is not

---

7. Appellant's Op. Br., at 21.

8. State, Dept. of Labor v. Minner, 448 A.2d 227, 229 (Del.1982); see also State v. Cook, 600 A.2d 352, 355 ("Generally accepted principles of statutory construction provide that, to the extent of any conflict, the expression of legislative intent in a more specific and later-enacted statute controls the former, more general statute.")

9. 11 Del. C. § 4120(d) (1994) (repealed by 71 Del. Laws. ch. 429).

10. See 71 Del. Laws ch. 429.

11. Appellant's Op. Br., at 15–16.

irreconcilable. Indeed, the statutes are easily harmonized. A juvenile who is adjudicated delinquent in connection with a sex offense will be designated a sex offender and be required to register.[12] Then, three years later, the Family Court may order, in an appropriate case, expungement of the juvenile record, including *"all evidence of such adjudication."*[13] Because sex offender registration is "evidence" of an adjudication that a juvenile committed a sex offense requiring registration, that evidence may be expunged as well.

▆▆▆ Thus, the Expungement Statute and the Sex Offender Registration Statutes are neither inconsistent nor irreconcilable. To be sure, Section 4121 establishes a process, independent of Section 1001 expungement, under which the Superior Court may relieve an individual of his or her sex offender designation. Even if that were somehow viewed as inconsistent with the Expungement Statute, this Court should be:

> reluctant to find repeal by implication even when the later statute is not entirely harmonious with the earlier one. If two statutes conflict somewhat, the court must, if possible, read them so as to give effect to both, unless the text or legislative history of the later statute shows that [the legislature] intended to repeal the earlier one and simply failed to do so expressly.[14]

▆▆▆ Here, there is no showing that the General Assembly intended to repeal in part the Expungement Statute when it adopted and later amended the Sex Of-

fender Registration Statutes. Had the General Assembly intended to prohibit expungement of a juvenile's sex offender registration, it could have so provided directly and explicitly. "The underlying purpose of allowing expungement is to afford a juvenile the opportunity of starting [ ] life 'anew' once having reached the age of majority and otherwise having come within the compliance requirements of the [expungement] statute."[15] This policy has been Delaware law for over fifty years,[16] and should not be changed in the absence of a clear statutory mandate. There is no such clear mandate. This Court will not do by judicial implication what the General Assembly itself has declined to do by express legislation.

**B. The Sex Offender Registration Statutes Do Not Evidence A More Specific Legislative Intent As To Expungement of A Sex Offender's Registration.**

For its amendment-by-implication argument to prevail, the State must also show that the Sex Offender Registration Statutes evidence, more specifically than the Expungement Statute, a legislative intent to prohibit the expungement of sex offender registration. But those later-enacted statutes cannot fairly be read to evidence any such specific legislative intent.

The State claims that the Registration Statutes are more specific, because 11 *Del. C.* § 4121(e)(2) expressly provides a particular mechanism to alter or lift a sex offender's registration requirement, namely, petitioning the Superior Court for a reduc-

---

**12.** 11 *Del. C.* §§ 4120 and 4121.

**13.** 10 *Del. C.* § 1001(c) (italics added).

**14.** Sutherland, Statutory Construction § 23.09 at 338 (5th ed.) (quoted in *Hubbard v. Dunkleberger*, 659 A.2d 227 (Table), 1995 WL 131789, at *6–7 (Del.Supr. Mar. 16, 1995)).

**15.** *Martin v. State*, 1986 Del.Fam. Ct., Lexis 199, at *3 (Del.Fam.Ct.).

**16.** See *Turkett v. State*, JK99–00687 (Del.Fam. Ct., Apr. 20, 2005) (Order) (recognizing that a juvenile expungement statute has been part of Delaware law since 1953).

tion in the offender's Risk Assessment Tier. Section 4121(e)(2), like 10 *Del. C.* § 1001, prescribes a minimum time period that must lapse before such a petition can be filed, and requires that the offender must not have been convicted of any additional crimes during that time period. Lastly, the State points to Section 4121(q), which provides that "This section [4121] shall be effective notwithstanding any law, rule or regulation to the contrary."

Although re-packaged to address the "greater specificity" prong of its statutory construction claim, the State's argument is basically a re-formulation of its initial claim that the Expungement and the Sex Offender Registration statutes are in irreconcilable conflict. About specificity the argument proves nothing, because the latter statutes nowhere specifically mention or even refer, directly or indirectly, to the Expungement Statute. At best, any arguable conflict between Section 4121(q) and Section 1001 is inferential, but even the inference cannot support the State's amendment-by-implication position, because Section 4121(q) is easily reconciled with Section 1001. The Sex Offender Registration Statutes are intended to cover all persons—including juveniles—who commit sex offenses that merit designating the offender as a "sex offender" and requiring him or her to register as such. Section 4121(q) may be viewed as intended to preclude any judicial interpretation that would exempt juveniles from the category of persons subject to those statutes. From this it does not follow, however, that a juvenile, once designated and registered as a sex offender, is forever precluded from seeking relief under the Expungement Statute, and must resort exclusively to the pathway for relief afforded by Section 4121. To so conclude would turn the applicable rule of construction—which would permit a finding that a later-enacted statute has amended an earlier one by implication only where (*inter alia*) the two statutes are in *irreconcilable* conflict—on its head.

\* \* \*

We conclude, for these reasons, that the fact that a juvenile is a registered sex offender, of itself and without more, does not constitute a "material objection" to expungement within the meaning of 10 *Del. C.* § 1001.

## II. *Juveniles Whose Adjudication Records Are Expunged Are Not Required To Maintain Their Registration As Sex Offenders Under 11 Del C. §§ 4120 and 4121.*

■ The State next argues, in the alternative, that even if this Court rules (as it now has) that the Sex Offender Registration Statutes do not trump the Expungement Statute, those statutes should be read to operate independently of each other, so that the Family Court's expungement of a juvenile adjudication will not eliminate that sex offender's designation and the attendant statutory registration and notification requirements. The State's alternative argument involves questions of law and of statutory construction, that are reviewed *de novo.*[17]

■ This argument labors under two insuperable burdens. The first is that it is in substance identical to the State's "material objection" argument, only packaged in different words. The second is that it

---

17. See authorities cited at note 5, supra. Although this question was not preserved below and the Family Court did not decide it, the interests of justice require that this Court decide the issue, because otherwise the full significance of the Family Court's order, i.e., the petitioners' removal from the sex offender registry will remain uncertain. See, *e.g., In re Ikard,* 2007 WL 1574527, at 3, n. 7 (Del.Fam. Ct. Mar. 23, 2007).

amounts to little more than *ipse dixit.* In that portion of its brief devoted to this argument, the State re-asserts that "[d]esignation as a 'sex offender' is a 'material objection' that precludes a sex offender from having his or her juvenile record expunged pursuant to [10 *Del. C.* § 1001]." The State then insists that "if the Court does not agree that Sections 4120 and 4121 prevail, [then] it *must* find that an expungement of an adjudication of delinquency for a sex offense is separate and distinct from the application of Delaware's Megan's Law [Sections 4120 and 4121] to a sex offender, and cannot nullify the statutorily-mandated designation of that person as a 'sex offender' or the related registration requirement."[18] But, the State nowhere shows why this Court, having rejected the predicate for its argument, *must* nonetheless validate that argument clothed in different words.

∎∎∎ Although the analysis could end at this point, we pause to mention that the State's apparent inability to offer reasoned argument in place of *ipse dixit* comes as little surprise. The State's alternative contention ignores the intent and the effect of expungement. A "sex offender" is defined to include "[a]ny juvenile who is adjudicated delinquent of [enumerated sexual] offenses...."[19] Once expungement of a juvenile's record is granted, it is as if the adjudication never occurred:

As used in the criminal law, "expungement" means the "eradication of a record of conviction or adjudication upon the fulfillment of prescribed conditions.... It is *not simply the lifting of disabilities* attendant upon conviction and a restoration of civil rights.... It is rather a redefinition of status, a process of *erasing the legal event of conviction* or adjudication and thereby restoring to the regenerative offender his *status quo ante.*"[20]

∎∎∎ An expunged adjudication cannot coexist with a requirement of continued maintenance of sex offender registration, because the adjudication itself becomes a nullity. That is manifestly the intent of Section 1001, which requires not only the expungement from the records of "all evidence of [the] adjudication," but also "the destruction of all indicia of arrest including fingerprints and photographs,"[21] to prevent an expunged adjudication from being used for any purpose. To interpret the Sex Offender Registration Statutes as trumping that provision of Section 1001 would not only contravene the legislative intent, but also would create an exception to Section 1001 not found in the language of either that statute or of Section 4121. Had the General Assembly intended for the expungement of a juvenile's record no longer to result in the destruction of *"all* indicia of arrest," it could have expressed that intent by amending Section 1001 or by addressing expungement in Sections 4120 and 4121. The role of this Court when construing a statute is to give effect to the

18. Appellant's Op. Br., at 29–30 (italics added).

19. *See* 11 *Del. C.* § 4121(a)(4).

20. *People v. Frawley*, 82 Cal.App.4th 784, 98 Cal.Rptr.2d 555, 559 (2000) (citations omitted, ellipses and emphasis in original); *see also, Stephens v. Van Arsdale*, 227 Kan. 676, 608 P.2d 972, 983–84 (1980) ("[A]nnulment of conviction statutes, often called expungement statutes, do not merely lift disabilities resulting from conviction and restore civil rights; they have the legal effect of restoring the reformed offender to his status quo existing prior to the conviction") (internal quotation marks omitted.)

21. 10 *Del. C.* § 1001(a).

policy intended by the General Assembly.[22] It is not to effectuate the inconsistent policy preferences of other branches of government.

### CONCLUSION

For the foregoing reasons, the judgments of the Family Court expunging the juvenile offense adjudication records of the appellees are affirmed.

**22.** *Giuricich v. Emtrol Corp.,* 449 A.2d 232, 238 (Del.1982).